IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA M. HERNANDEZ,<br><br>        Plaintiff,<br><br>    vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____/ | CASE NO. CV-F-05-1155 LJO<br><br>**MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 16) |

Plaintiff Monica M. Hernandez ("claimant") seeks judicial review of an administrative decision denying her claim for Supplemental Security benefits under the Social Security Act, Title XVI ("Act"). Pursuant to 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a January 19, 2006 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed her complaint on September 9, 2005 and her opening brief on March 28, 2006. The Commissioner filed her opposition to the appeal on April 27, 2006. Claimant filed a reply brief on May 9, 2006.

/////

/////

# BACKGROUND

## Administrative Proceedings

Claimant filed an application for supplemental security income under the Social Security Act on February 26, 2003, alleging a disability onset of May 17, 1998 due to degenerative disc disease, severe back pain, neck pain, leg pain and headaches. (Administrative Record ("AR") 65-68, 77.) The application was denied initially and upon reconsideration. (AR 51-54, 57-61.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on January 5, 2005. (AR 18-24.) The Appeals Council denied review. (AR 10-12.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## Claimant's Background and Work Experience

Claimant was born on October 11, 1960. (AR 209.) She graduated from high school. (AR 209.) Claimant's past relevant work was as a pharmacy technician and clerical worker. (AR 210.)

## Medical History

The pertinent medical history is summarized as follows.

On July 31, 2001, claimant first was seen at Sage Brush Medical Plaza by Fidel Huerta, M.D. (AR 199-200.) Claimant reported a history of chronic back pain from a fall in 1988. (AR 199.) She reported that an MRI showed degenerative disc disease. Dr. Huerta's physical examination found no palpable lumbar sacral tenderness; her sitting and supine straight leg raising tests were primarily negative, with some limitation of elevation; her reflexes were normal; and her motor strength was normal. (AR 199.) Dr. Huerta assessed chronic back pain, hypertension and tinea pedis (athlete's foot), and prescribed Naprosyn and Tylenol extra-strength as anti-inflammatory and pain relief medications. (AR 199-200.)

On November 6, 2001, Dr. Huerta saw the claimant for a followup visit; she complained of a two-week history of headaches and hot flashes, and with continuing back pain, worse with menses. (AR 150-51, 197-98.) The doctor assessed tension headaches, probably secondary to recurrent back pain; right ear cerumen impaction; cervical trapezius muscle spasm; history of recurrent back pain. (AR 150-51, 197-98.) Claimant requested that Dr. Huerta sign a medical report, but he informed her he would have to review her medical records before he could do so. (AR 150-51, 197-98.) He prescribed

ear drops, Paxil, Tylenol extra strength, and Soma (for muscle spasm). (AR 150-51, 197-98.)

On November 28, 2001, claimant saw Dr. Huerta first at Kern Medical Center and then at Sagebrush for back pain of three days' duration. He assessed lumbar spasm and chronic back pain secondary to degenerative disc disease. (AR 147-149.) The doctor gave the claimant a Toradol injection, prescribed Soma, continued her anti-inflammatory medications and advised her to return to the clinic for followup evaluation. (AR 147.)

On January 23, 2002, claimant saw Dr. Huerta for a followup for back pain, but she was concerned about her blood pressure. (AR 145.) She reported that the back pain was tolerable with anti-inflammatory medications. (AR 145.) She was assessed with hypertension, with blood pressure at 155/97 and that she was controlling her back pain with anti-inflammatory medications. (AR 145-146.)

On May 3, 2002, the claimant saw Dr. Huerta complaining of lower and upper back pain of two days' duration, and muscle spasm in her left leg. (AR 139, 142.) No radiculopathy was found. (AR 142.) She stated she needed medication refill. (AR 142.) On May 22, 2002, claimant was seen at Kern Medical Center and diagnosed with a staph infection; she also complained of back pain. (AR 136-138.)

On October 22, 2002, the claimant reported to the Kern Medical Center complaining of a recurrence of low back pain, lower extremity fatigue and pain in her lower left leg. (AR 130.) She reported her left leg went numb after she walked 3 blocks and that the pain had been severe for 2 weeks, but had improved the last 3 days. (AR 130.) On examination, Dr. Huerta found no palpable lumbosacral tenderness; negative bilateral straight leg raising; hip rotation intact; lumbar flexion equal to 15 degrees bilateral without lumbar pain. (AR 133.) Dr. Huerta assessed chronic back pain, hypertension. (AR 132.) He prescribed Orudis, Tylenol, Tenormin and Tinacitin. (AR 132.)

On March 26, 2003, claimant reported to Kern Medical Center with complaints that her back went out and she experience severe sharp pain. (AR 122.) Dr. Huerta referred claimant to orthopedist due to chronic back pain and in need of a lumbar corset. (AR 116, 123, 194.) Claimant reported that she has been dietician for her obesity and has been walking "at a fast pace." (AR 124.)

On April 9, 2003, claimant reported to Kern Medical Center with complaints of back pain and needing medication. (AR 190.) Her back was non tender and without significant findings in the range of motion. (AR 191.)

1   On May 30, 2003, claimant reported to Kern Medical Center with complaints of a dental infection, chronic back pain, among other complaints, as part of a followup. (AR 109.) She was treated for an ear infection. (AR109-112.) Back tenderness and some reduction in flexion were reported. (AR 112.)

On July 26, 2003, claimant was examined by Nayan Shah, M.D. for a comprehensive internal examination. (AR 152-156.) Claimant complained of "back pain." (AR 152.) Claimant reported that she takes Orudis pain medication which helps her quite a bit with pain and Tylenol Extra Strength also helps. (Ar 152.) Her pain is constant and full and ache-like. (AR 152.) Claimant reported that her activities of daily living included doing most of the house work, cooking meals, light mopping, dishes and laundry. (AR 153.) She enjoys walking and walks around her daughter's school track. Her hobbies include dancing and went dancing on Mother's day. (AR 153.) Dr. Shah found the Claimant to be morbidly obese and to have some trouble getting off the examination table from the supine position, but in no acute distress. (AR 153-54.) Her blood pressure was 144/94, her height was 60-1/2" and her weight, 208 pounds. (AR 154.) The claimant's gait was normal; she had no Romberg sign; she was able to perform tandem gait; heel gait and toe-walking gait; but she had some limited range of motion. (AR 154.) Her straight leg raising was normal; her sensory exam was unremarkable; her reflexes were normal; her Babinski's sign was negative; and her cranial nerves were intact. (AR 154.) Dr. Shah diagnosed chronic low back pain secondary to musculoskeletal; morbid obesity; hypertension with poor control; generalize arthritis possibly secondary to osteoarthritis. (AR 156.)

Dr. Shah functionally assessed claimant with ability to walk and stand 6 hours out of eight; sit without restrictions; no need for assistive device for ambulation; can lift and carry 50 pounds occasionally and 25 pounds frequently. (AR 156.) She was limited from bending, stooping, and crouching secondary to obesity and limitation on flexion. (AR 156.) A lumbar spine x-ray on July 26, 2003 showed minimal narrowing of L4-L5. (AR 157.)

On July 10, 2003, claimant was seen by Dr. Huerta for a follow up for blood pressure and obesity and she complained of back pain. (AR 182-184.) She tolerated the diet pills and had some weight loss. (AR 182.)

On July 31, 2003, claimant was seen by Richard Frelinger, D.O., complaining of slipping on wet

4

floor while mopping and twisting her back. She was assessed with a lumber strain and giving Robaxin and told to continue Orudis. (AR 177.)

On August 7, 2003, the claimant was seen by Dr. Huerta at the Kern Clinic, who noted she had been out of her blood pressure medications. (AR 174.)

On August 12, 2003, state agency physician Arthur Jing, M.D. completed a Physical Residual Functional Capacity Assessment form. (AR 158-165.) He assessed claimant as capable of lifting 20 pounds occasionally and 10 pounds frequently, standing, sitting and walking 6 hours out of eight, and limited with occasional climbing, balancing and stooping and from frequently kneeling, crouching and crawling. (AR 160.) This assessment was affirmed by state agency physician Anne Khong, M.D. on December 5, 2003. (AR 165.)

On September 22, 2003, claimant returned to Dr. Huerta with claims of leg pain and reported that she was not having problems with daily living, but not having problems ambulating. (AR 169.)

## Hearing Testimony

Claimant testified she was unable to work since May 1998. (AR 210.) Claimant has 3 children, two of which live with her. (AR 211.) She testified that she helps in her son's school a little bit. (AR 211.) She has pains in her back and legs and she gets headaches. (AR 211.) Her daughter helps around the house and does chores. (AR 212.) She can lift at most 10 pounds. (AR 210.) Claimant can sit for 10 minutes, and stand for 10 minutes. (AR 212.) She has a driver's license but has had to pull over and get someone to pick her up because she gets cramps in her legs. (AR 213.) Friends and family visit her, she goes to church. (AR 213.) The middle to lower back hurts and she needs support and wears a brace. (AR 214.) The medication she takes helps "somewhat" with no side effects. (AR 214.) She takes Paxil because she is depressed. (AR 216.) She was the victim of spousal abuse and he hurt her back. (AR 217.) She uses a cane most of the time. (AR 218.) Her time with the consultative examiner was very quick, probably about 30 minutes. (AR 220-221.) She has not had x-rays of her back for years. (AR 221.) Her feet zing, tingle and hurt. (AR 222.) She has pain in her hips. (AR 222.) Her high blood pressure is controlled by medication. (AR 222.) Her pain level is about 7.5 out of ten and when she takes her medicine, it is about 4-5. (AR 223.) She cannot kneel, stoop or squat and bending from the hip is painful. (AR 223.) She has memory problems. (AR 225.) What keeps her from doing a

sedentary job is the pain in her back. (AR 227.) The pain pills make her sleepy. (AR 227.)

Claimant testified that she worked as a night attendant at a residential home where she did some paperwork, passed out medication and oversaw the facility. (AR 229.) She was also a secretary where she made appointments, greeted people, and did typing. (AR 229.)

Vocational Expert ("VE") Lynne Tracy testified. The VE testified that the past relevant work as a ward clerk was light work and as a residence supervisor, sedentary work. (AR 231.) In a hypothetical, the VE was asked whether a person who could do light work, but limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling, with mild limitation on attention and concentration, understanding and memory could perform claimant's past relevant work. The VE testified the person could perform claimant's past relevant work. (AR 232.) In a second hypothetical, where there was no climbing, occasional balancing, no stooping, kneeling, crouching crawling and occasional reaching overhead, and mild limitation on attention, concentration, understanding and memory, the VE testified that claimant could perform the administrative clerk position, and the night attendant. (AR 232.) In addition to the second hypothetical, the ALJ added the limitation that the person would be required to take four 15-minute unscheduled breaks each day. The VE testified claimant cannot perform the past relevant work. The VE also testified that if the person is required to miss one day a week to recover from pain, she could not perform the past relevant work. (AR 233.)

## **ALJ Findings**

In his January 5, 2005 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 18.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 23-24):

1. On February 26, 2003, the claimant filed an application for Supplemental Security Income payments. She has not engaged in substantial gainful activity since her alleged onset date of June 18, 1999. The claimant's alleged impairments are severe, but do not meet or equal the criteria set forth in any applicable section of the Listing of Impairments.

2. The claimant's subjective statements regarding symptoms have been carefully considered, but to the extent that those statements constitute an allegation that the

6

   claimant has been precluded from engaging in all substantial gainful activity by an impairment(s) for a period of 12 continuous months, they are found to be neither fully credible or reliable (Social Security Ruling 96-7p).

3.  The claimant was 43 years of age at the time of her alleged onset date, has a twelfth grade education, and retains a residual functional capacity to perform light work activity that involves standing and walking six hours out of an eight hour workday and sitting at least six hours in an eight-hour work day and lifting and carrying 20 pounds occasionally and 10 pounds frequently with occasional climbing, balancing, stooping, kneeling, crouching and crawling. Further the claimant has mild limitations with concentration, attention, understanding and memory. The ALJ finds that the claimant is able to perform her past relevant work as a ward clerk and administrative clerical and her past relevant sedentary work as a night attendant.

4.  The claimant has not been under a "disability" within the meaning of the Social Security Act, as amended, at any time on or before the date of this decision.

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either

disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ erred by insufficiently articulating clear and convincing reasons for rejecting claimant's subjective complaints of her disabling pain.

## The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3. If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

---

[1] *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th

4.  If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5.  If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In this case, claimant convinced the ALJ that she met the criteria in step one of the sequential analysis; that she has not been engaged in substantial gainful employment.

At step two, the ALJ must determine if the impairment is severe. The ALJ determined that the medical evidence establishes severe impairments of back pain, osteoarthritis and hypertension. (AR 20.) At step three, the ALJ found that none of these impairments meet the Listings. (AR 20.)

### The ALJ's Finding of Residual Functional Capacity

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote

---

Cir. 1985.

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found that claimant had the residual functional capacity to perform light work and sedentary work.

Under the applicable regulations, "light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b). Social Security Ruling 83-10 further defines this term by stating that " . . . the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Ruling 83-10 further explains that "[s]itting may occur intermittently during the remaining time." If someone can do light work, it is determined that he or she can also do sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567 and 416.967. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

### ALJ's Review the Testimony

Claimant argues that the ALJ failed to properly evaluate claimant's credibility regarding her subjective complaints of disabling pain.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair*

*v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148.

An ALJ may consider the following factors to determine the credibility of a claimant's allegations:

    (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4)    Treatment, other than medication, for relief of pain;

    (5)    Functional restrictions;

    (6)    Claimant's daily activities;

    (7)    Unexplained, or inadequately explained, failure to seek treatment or follow up a prescribed course of treatment; and

    (8)    Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); 20 C.F.R. §1529.

All of the above factors are not required in an evaluation of a claimant's credibility. "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147, 1148 (9th Cir. 2001) (upholding adverse credibility finding

1  where ALJ cited claimant's "lack of cooperation at the hearing, her presentation at the hearing, her
2  tendency to exaggerate, her inconsistent statements, and her lack of cooperation during consultative
3  examinations"); *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999) (upholding adverse credibility finding
4  on claimant's inconsistent testimony with that of treating physician's notes, minimal conservative
5  treatment for alleged incapacitating pain).

6  Here, the ALJ considered the entire record, both medical and nonmedical, including claimant's
7  testimony. It is clear that the ALJ did not totally reject the pain complaints and partially credited the
8  pain. He so stated. Indeed, the ALJ did not fully adopt the consultative examiner's functional
9  assessment of capability to perform medium work. (AR 152-156.) Rather, the ALJ adopted the
10 functional restriction assessed by the reviewing state agency physician, who imposed limitations to light
11 work. (AR 20, 23.) The opinion of a reviewing physician and the ALJ's conducting an independent
12 analysis of the medical evidence may constitute substantial evidence. *Anderson v. Shalala*, 51 F.3d 777,
13 779 (8th Cir. 1995).

14 The ALJ, here, in part, relied upon the lack of medical evidence in the record. The ALJ reviewed
15 the records of Dr. Huerta and the consultative findings of Dr. Shah. The ALJ noted the lack of any
16 findings to support the level of disabling pain claimed by claimant:

> "The claimant provided no records from any treating sources documenting treatment for any other physical or mental impairments. It is the claimant's burden to prove her disability, ans she has not met that burden regarding her alleged physical and mental complaints. The Social Security Administration has made reasonable efforts to obtain the evidence necessary to make a decision.
>
> "The claimant has not been diagnosed with any functionally restrictive physical or mental impairment by any treating source and has not demonstrated that her reported physical impairments have significantly impacted her daily activities or ability to function. Further, the claimant's limited objective clinical evidence does not support the claimant's alleged impairments or restrictions." (AR 21.)

25 The lack of medical evidence in the record was a compelling point:

> "The claimant's allegations of symptoms simply do not support an allegations that she is incapable of performing any work activity. Significantly, her medical history and the objective Medical evidence offer no basis for drawing reasonable conclusions regarding the extent of her alleged symptoms. These factors have been taking into account in the

12

weighing of the claimant's credibility and determination of her residual functional capacity." (AR 22.).

While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ considered that claimant's medications that claimant were taking were effectual: "there are no indications that her medications are ineffective (assuming that she takes them as and when prescribed), or that they cause any disabling side effects."[5] (AR 22.)

The ALJ also considered daily activities "the claimant has failed to show any condition, which would prevent her from performing virtually all of her normal daily activities." (AR 22.) Indeed, claimant reported to the consultative examiner a compelling list of daily activities in which she engaged: Claimant reported that her activities of daily living included doing most of the house work, cooking meals, light mopping, dishes and laundry. (AR 153.) She enjoys walking and walks around her daughter's school track. Her hobbies include dancing and went dancing on Mother's day. (AR 153.)

In her reply brief, claimant argues that the Court may only consider the bases articulated by the ALJ in the decision, and not any *post hoc* reasons.

The Court agrees with this legal principle. A reviewing court may evaluate an agency's decision "only on the grounds articulated by the agency." *Ceguerra v. Secretary,* 933 F.2d 735, 738 (9th Cir.1991) (When the decision of an ALJ rests on a negative credibility evaluation, the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record.) It is not for this Court to justify the ALJ's ultimate decision by setting forth additional legal arguments, instead it is the reasoning given in the ALJ's decision that must be closely examined. *Byrnes v. Shalala* 60 F.3d 639, 642 (9th Cir. 1995) (findings must meet the *Bunnell* standard, so that a reviewing court may "determine whether the ALJ rejected [claimant]'s testimony on permissible grounds and did not

---

[5]Claimant argues that the ALJ erred because it was clamant's blood pressure medication she did not take regularly, not her pain medication. The point is that there is not substantial evidence in the record that the pain medication was ineffectual. She was taking medication prescribed, the medication helped her and she so reported to her physician. She also testified the medication helped her "somewhat."

arbitrarily discount his testimony.")

Here, the ALJ partially rejected the excessive pain complaints on the basis of lack of objective medical evidence, effectiveness of pain medication, and scope of daily living. In *Orteza v. Shalala*, 50 F.3d 748 (9th Cir.1995), the Ninth Circuit similarly upheld an adverse credibility finding on the same bases: where ALJ identified treating physician's statement as to lack of objective evidence, pointing to the scope of activities identified in claimant's initial application, no medication side effects or prescription medicine.

Thus, the ALJ made specific findings as to the lack of credibility as to the extent of claimant's purported pain. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d at 604. Accordingly, there is substantial evidence in the record to support the ALJ's partial rejection of claimant's subjective complaints.

## **CONCLUSION**

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Monica M. Hernandez. IT IS SO ORDERED.

**Dated:   May 31, 2006**            **/s/ Lawrence J. O'Neill**
b9ed48                                     UNITED STATES MAGISTRATE JUDGE